**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**EDGAR CARRELO,**

      **Plaintiff,**

    **v.**

                            **Civil Action No. 3:23cv661**

**KEYSTONE RV COMPANY,**

      **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions: (1) Defendant Keystone RV Company's ("Keystone") Motion to Dismiss or, in the Alternative, Motion to Transfer (the "Motion to Transfer"),[1] (ECF No. 14);[2] and, (2) Plaintiff Edgar Carrelo's Motion to Stay Proceedings Pursuant to 50 U.S.C. § 3934 of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901 *et seq.* (the "Motion to Stay"), (ECF No. 22). Mr. Carrelo responded in opposition to the Motion to Transfer, (ECF No. 18), and Keystone replied, (ECF No. 19). Keystone has not responded to the Motion to Stay that Mr. Carrelo filed on May 16, 2024, and the time to do so has expired.

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

---

[1] Although Defendants style the Motion as a Motion to Dismiss or, in the Alternative, Motion to Transfer, (ECF No. 14), the Court solely addresses the arguments regarding transfer. The Court does not address arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(6).

[2] The Court employs the pagination assigned by the CM/ECF docketing system.

For the reasons articulated below, the Court will deny without prejudice the Motion to Stay, (ECF No. 22), and grant in part the Motion to Transfer to the extent that it seeks transfer, (ECF No. 14). The Court will transfer the case in its entirety to the United States District Court for the Northern District of Indiana, South Bend Division. The Court does not reach the arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) and denies without prejudice those portions of the Motion to Transfer that argue dismissal pursuant to Rule 12(b)(6). (ECF No. 14.)

## I. Factual and Procedural Background

### A.    Factual Background

In his Complaint, Mr. Carrelo asserts that he is a 19-year veteran of the United States Coast Guard. (ECF No. 1 ¶ 4.) On November 2, 2022, Mr. Carrelo purchased a 2022 Montana High Country 377FL with VIN 4YDFHMU21NA742**431**[3] (the "RV") from Camping World RV Sales ("Camping World") in Ashland, Virginia for $83,437.10. (ECF No. 1 ¶ 4.) Camping World is an authorized service and repair agent of Keystone, the manufacturer of the RV. (ECF No. 1 ¶ 4.) Mr. Carrelo avers that the RV included a written warranty. (ECF No. 1, at 2.)

On January 6, 2023, Mr. Carrelo visited a Camping World location in Cocoa, Florida to repair bolts which were protruding through the floor of the RV. (ECF No. 1 ¶ 5.) Mr. Carrelo maintains that the staff at this location informed him that the bolts resulted from a manufacturing defect and Camping World could not repair them. (ECF No. 1 ¶ 5.) On February 24, 2023, Mr.

---

[3] Keystone argues that the VIN for the RV is in fact 4YDFHMU21NA742**413**, and that the VIN provided in the Complaint reflects a typographical error. (ECF No. 15-1 ¶ 1.) The discrepancy in the VINs offered by the parties is immaterial for the Motions before the Court. The propriety of transfer turns on the forum-selection clause, not a particular vehicle identification number. Similarly, the propriety of a stay turns on whether Mr. Carrelo has satisfied SCRA's requirements, which do not concern the accuracy of the vehicle identification number.

Carrelo returned to Camping World for assistance in repairing the RV's stove, door frame, slide topper, vinyl flooring, lights, and bedroom slide. (ECF No. 1 ¶ 6.) After holding the RV for 76 days, Camping World informed Mr. Carrelo that they could not fix these defects. (ECF No. 1 ¶ 6.) On May 30, 2023, Mr. Carrelo visited a Camping World location in St. Augustine, Florida seeking additional repairs of the RV, namely a malfunctioning back door and leaks throughout the vehicle that had caused water damage. (ECF No. 1 ¶ 7.) Mr. Carrelo states that the RV has remained at the St. Augustine location since May 30, 2023, and that Keystone has refused to authorize the needed repairs. (ECF No. 1 ¶ 7.)

### B. **Procedural Background**

In his Complaint Mr. Carrelo asserts five counts:

| | |
|---|---|
| Count I: | violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; |
| Count II: | revocation of acceptance under the Virginia Uniform Commercial Code, Va. Code § 8.2-608; |
| Count III: | recission of contract; |
| Count IV: | breach of warranty under the Virginia Uniform Commercial Code, Va. Code § 8.2-714; and, |
| Count V: | violation of the Virginia Consumer Protection Act, Va. Code § 59.1-196 *et seq.* |

(ECF No. 1, at 4–9.)

On December 15, 2023, Keystone filed the instant Motion to Dismiss or, in the Alternative, Motion to Transfer. (ECF No. 14.) Keystone argues that dismissal is proper under Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6)[4], and in the alternative that the Court should

---

[4] Rule 12 states, in pertinent part:

transfer this matter to Indiana based on the mandatory forum-selection clause and choice of law

provision in Keystone's Limited Warranties. (ECF No. 15, at 8–9.)[5] The forum-selection clause

and choice of law provision reads as follows:

> EXCLUSIVE JURISDICTION FOR DECIDING LEGAL DISPUTES
> RELATING TO ALLEGED BREACH OF WARRANTY OR
> REPRESENTATIONS OF ANY NATURE MUST BE FILED IN THE COURTS
> WITHIN THE STATE OF MANUFACTURE. ALSO, THE LIMITED
> WARRANTIES WILL BE INTERPRETED AND CONSTRUED IN
> ACCORDANCE WITH THE LAWS OF THE STATE OF INDIANA. ANY
> AND ALL CLAIMS, CONTROVERSIES, AND CAUSES OF ACTION
> ARISING OUT OF OR RELATING TO THE LIMITED WARRANTIES,
> WHETHER SOUNDING IN CONTRACT, TORT OR STATUTE, WILL BE
> GOVERNED BY THE LAWS OF THE STATE OF INDIANA, INCLUDING
> ITS STATUTE OF LIMITATIONS, WITHOUT GIVING EFFECT TO ANY
> CONFLICT OF LAW RULE THAT WOULD RESULT IN THE
> APPLICATION OF THE LAWS OF A DIFFERENT JURISDICTION.

(ECF No. 15-4, at 18.)

Keystone avers that Mr. Carrelo's RV was manufactured in Goshen, Indiana, making

Indiana the "state of manufacture" for purposes of the forum-selection clause. (ECF No. 15,

at 2.) Keystone stresses that Mr. Carrelo's claim must proceed under Indiana law in an Indiana

court. (ECF No. 15, at 2–3.)

---

> \*      \*      \*
> (2) lack of personal jurisdiction;
> \*      \*      \*
> (6) failure to state a claim upon which relief can be granted[.]

Fed. R. Civ. P. 12(b)(2).

[5] Keystone attaches as Exhibit E to the Motion to Transfer the RV Owner's Manual that
contains the choice of law and forum-selection language. (ECF No. 15-4, at 18.) "[A] court may
consider official public records, documents central to plaintiff's claim, and documents
sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion to dismiss
into one for summary judgment] so long as the authenticity of these documents is not disputed."
*Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam)
(citations omitted). Mr. Carrelo does not contest the authenticity of these documents.

On January 10, 2024, Mr. Carrelo filed his opposition. (ECF No. 18.) On January 16, 2024, Keystone replied. (ECF No. 19.) On May 2, 2024, this Court ordered Mr. Carrelo to show cause as to why the Court should not grant the Motion to Transfer (the "Show Cause Order"). (ECF No. 20.) The Court identified five cases filed in the Eastern District of Virginia with nearly "identical facts and forum-selection clauses" to the instant matter, all of which were transferred to the Northern District of Indiana. (ECF No. 20, at 1.) On May 16, 2024, Mr. Carrelo responded to the Show Cause Order. (ECF No. 21.)

Also on May 16, 2024, Mr. Carrelo filed the instant Motion to Stay, in which he asks the Court to stay this case pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. § 3934, while Mr. Carrelo is on deployment with the United States Coast Guard. (ECF No. 22; ECF No. 23 at 1.)

For the reasons articulated below, the Court will deny without prejudice the Motion to Stay. (ECF No. 22.) The Court will grant the Motion to Dismiss to the extent it seeks to transfer this case to Indiana. (ECF No. 14.) The Court will transfer the case in its entirety to the United States District Court for the Northern District of Indiana, South Bend Division. The Court does not consider the arguments for dismissal pursuant to Rule 12(b)(6), and denies the Motion without prejudice to the extent it argues dismissal under Rule 12(b)(6). (ECF No. 14.)

## II. Legal Standard

### A.    Motions to Stay Under the Servicemembers Civil Relief Act

The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901 *et seq.*, is designed to "expedite the national defense" by providing for the temporary suspension of judicial proceedings "that may adversely affect the civil rights of servicemembers during their military service" in order "to enable such persons to devote their entire energy to the defense needs of the

Nation." 50 U.S.C. § 3902.[6]  The Act and its predecessors are "liberally construed to protect

those who have been obliged to drop their own affairs to take up the burdens of the nation."

*Boone v. Lightner*, 319 U.S. 561, 575 (1943).  SCRA "prescribes procedural measures designed

to ensure that active duty servicemembers are not surprised during their deployment by adverse

legal or financial consequences at home." *Rouse v. Moore*, --- F. Supp. 3d ----, No. JKB-22-

00129, 2024 WL 1216475, at *4 (D. Md. Mar. 20, 2024).  Despite the broad scope of procedural

relief, courts must "see that the immunities of the Act are not put to [an] unworthy use." *Boone*,

319 U.S. at 575.

Among many forms of procedural relief, SCRA provides for stays in civil actions in two

circumstances relevant here.  First, SCRA requires a stay of "any civil action or proceeding"

when a servicemember is in military service and has notice of the action.  50 U.S.C. § 3932.[7]

---

[6] Section 3902 states:

The purposes of this chapter are—

(1) to provide for, strengthen, and expedite the national defense through
protection extended by this chapter to servicemembers of the United States to
enable such persons to devote their entire energy to the defense needs of the
Nation; and

(2) to provide for the temporary suspension of judicial and administrative
proceedings and transactions that may adversely affect the civil rights of
servicemembers during their military service.

50 U.S.C. § 3902.

[7] Section 3932 provides in pertinent part:

(a) APPLICABILITY OF SECTION
This section applies to any civil action or proceeding . . . in which the plaintiff or
defendant at the time of filing an application under this section—

(1) is in military service or is within 90 days after termination of or release
from military service; and

Under § 3932, a court *may* on its own motion—and *shall*, upon application by a servicemember—stay a civil action "[a]t any stage before final judgment" provided that the servicemember provides certain information to the court. 50 U.S.C. § 3932(b)(1). The required information includes "facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear," "a date when the servicemember will be available to appear[,]" and a "communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember." 50 U.S.C. § 3932(b)(2).

---

　　　　(2) has received notice of the action or proceeding.

　(b) STAY OF PROCEEDINGS

　　　　(1) AUTHORITY FOR STAY
　　　　At any stage before final judgment in a civil action or proceeding in which
　　　　a servicemember described in subsection (a) is a party, the court may on
　　　　its own motion and shall, upon application by the servicemember, stay the
　　　　action for a period of not less than 90 days, if the conditions in paragraph
　　　　(2) are met.

　　　　(2) CONDITIONS FOR STAY
　　　　An application for a stay under paragraph (1) shall include the following:

　　　　　　　　(A) A letter or other communication setting forth facts stating the
　　　　　　　　manner in which current military duty requirements materially
　　　　　　　　affect the servicemember's ability to appear and stating a date
　　　　　　　　when the servicemember will be available to appear.

　　　　　　　　(B) A letter or other communication from the servicemember's
　　　　　　　　commanding officer stating that the servicemember's current
　　　　　　　　military duty prevents appearance and that military leave is not
　　　　　　　　authorized for the servicemember at the time of the letter.

50 U.S.C. § 3932(a)–(b).

Generally, courts do not grant stays on a "mere showing" that a party is in the military service. *Dalenberg v. City of Waynesboro*, 221 F. Supp. 2d 1380, 1382 (S.D. Ga. 2002) (quoting *Boone*, 319 U.S. at 565). Instead, a court must "determine whether the ability of the party in military service to prosecute [their] case is materially affected by [their] service and may properly deny the stay if the party will not be materially affected." *Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1191 (11th Cir. 2001). A stay is more likely warranted when a servicemember is stationed outside of the United States, their placement is involuntary, leave is not authorized, and the servicemember has made a good faith effort to make themselves available for proceedings. *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 648-49 (D. Minn. 2002) (collecting cases).

Second, SCRA provides for stays of the execution of any judgment or order where a servicemember "is materially affected by reason of military service in complying with [the] court judgment or order." 50 U.S.C. § 3934.[8]  Necessarily, a stay under § 3934 requires that a servicemember has made an appearance or that a court is otherwise aware that an absent party is a servicemember. *Rouse*, 2024 WL 1216475, at *9.

---

[8] Section 3934 provides in part:

> (a) COURT ACTION UPON MATERIAL AFFECT DETERMINATION
> If a servicemember, in the opinion of the court, is materially affected by reason of military service in complying with a court judgment or order, the court may on its own motion and shall on application by the servicemember—
>
> > (1) stay the execution of any judgment or order entered against the servicemember[.]

50 U.S.C. § 3934(a).

### B.    Personal Jurisdiction, Venue, and Forum-Selection Clauses

The Supreme Court of the United States has held that courts ordinarily should address personal jurisdiction before venue, but "when there is a sound prudential justification for doing so . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979). For example, if deciding personal jurisdiction would involve analysis of a novel issue, it is appropriate to withhold analysis when venue is clearly improper. *Id.* at 181. Likewise, a court in its discretion can refrain from deciding personal jurisdiction as to each party when prudent to do so because venue is improper. *Adhikari v. KBR, Inc.*, No. 1:15-cv-1248 (JCC), 2016 WL 4162012, at *3–4 (E.D. Va. Aug. 4, 2016). "[A] court need not have personal jurisdiction over defendants before transferring a case." *See id.* (citations omitted).

"[A] forum-selection clause does not render venue in a court 'wrong' or 'improper' . . . [though] it permits transfer to any district where venue is also proper[.]" *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas ("Atl. Marine")*, 571 U.S. 49, 59 (2013). "[W]hen parties to a contract confer jurisdiction and venue on a particular court, as a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 649 (4th Cir. 2010). "This presumption of enforceability, however, only applies if the forum[-]selection clause is mandatory rather than permissive." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir.), *as amended* (Mar. 27, 2018), cert. denied sub nom. *Republic of Korea's Def. Acquisition Program Admin. v. BAE Sys. Sol. & Servs., Inc.*, 139 S. Ct. 209 (2018).

"A mandatory clause requires litigation to occur in a specified forum; a

permissive clause permits litigation to occur in a specified forum but does not bar litigation

elsewhere." *Id.* "[A] forum[-]selection clause is 'mandatory,' [if] it contains some language

requiring that 'the designated courts are the only ones which have jurisdiction.'" *Unistaff, Inc. v.

Koosharem Corp.*, 667 F. Supp. 2d 616, 619 (E.D. Va. 2009) (internal citations omitted). Courts

have determined that "[w]ords such as 'shall,' 'only' or 'exclusive' are often indicators that

a clause is mandatory rather than permissive." *Id.*

## C.   Effect of a Valid Forum-Selection Clause

"[A] forum-selection clause may be enforced by a motion to transfer under [28 U.S.C.]

§ 1404(a)[9] . . . . When a defendant files such a motion, . . . a district court should transfer the

case unless extraordinary circumstances unrelated to the convenience of the parties clearly

disfavor a transfer." *Atl. Marine*, 571 U.S. at 52. "When the parties have agreed to a valid

forum-selection clause, a district court should ordinarily transfer the case" to the agreed-upon

forum. *Id.* at 62. "The presence of a valid forum-selection clause requires district courts to

adjust their usual § 1404(a) analysis[10] in three ways." *Id.* at 63. "First, the plaintiff's choice of

---

[9] Section 1404(a) states:

(a) For the convenience of parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any other district or division where it
might have been brought or to any district or division to which all parties have
consented.

28 U.S.C. § 1404(a).

[10] Under Section 1404(a), "[d]istrict courts within this circuit consider four factors when
deciding whether to transfer venue:  (1) the weight accorded to plaintiff's choice of venue; (2)
witness convenience and access; (3) convenience of the parties; and[,] (4) the interest of justice."
*Trs. of the Plumbers & Pipefitters Nat'l Pension Fun v. Plumbing Servs., Inc.*, 791 F.3d 436, 444
(4th Cir. 2015).

forum merits no weight," and instead, "the plaintiff bears the burden of establishing why that transfer to the [agreed-upon] forum . . . is unwarranted." *Id.* Second, a district court should not consider the parties' private interests because the parties "waive[d] the right to challenge the preselected forum as inconvenient" by agreeing to the forum-selection clause. *Id.* at 64. Third, when a party files suit in a different forum than the agreed-upon forum, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

A federal court must apply federal law when interpreting a forum-selection clause because this "implicates what is recognized as a procedural matter governed by federal law—the proper venue of the court." *Albemarle Corp.*, 628 F.3d at 650. Forum-selection clauses are unenforceable only upon a clear showing "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

### III. Analysis

Because Mr. Carrelo's Motion to Stay fails to meet SCRA's requirements, the Court will deny without prejudice the Motion to Stay. The Court will transfer this case in its entirety because the parties have assented to a valid and enforceable mandatory forum-selection clause. Because the forum-selection clause warrants transfer, the Court declines to address Keystone's arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

### A.    The Motion to Stay Does Not Satisfy the Requirements of SCRA

Mr. Carrelo urges this Court to delay adjudication of the Motion to Transfer and instead grant his Motion to Stay. (ECF No. 21, at 3.) Mr. Carrelo bases his Motion to Stay on 50 U.S.C. § 3934, although § 3932 is the proper provision for the relief he requests. First, § 3934 does not apply to Mr. Carrelo's request because that section concerns the stay of the execution of a

judgment or order, but Mr. Carrelo is not currently subject to the execution of any judgment or order. Second, the Court will deny the Motion to Stay under § 3932 because Mr. Carrelo did not satisfy the requirements under that provision, namely the inclusion of a letter from his commanding officer and the indication of a date on which Mr. Carrelo would be available to continue the litigation. Thus, the Court will deny the Motion to Stay without prejudice.

### 1.   50 U.S.C. § 3934 Does Not Apply Because No Judgment or Order Pends

Mr. Carrelo bases his Motion to Stay on 50 U.S.C. § 3934, which provides for, *inter alia*, a stay of the execution of any judgment or order "[i]f a servicemember, in the opinion of the court, is materially affected by reason of military service in complying with a court judgment or order." (ECF No. 23, at 1 (quoting 50 U.S.C. § 3934(a)).)

Section 3934 does not govern Mr. Carrelo's Motion to Stay. Section 3934 applies where a servicemember must comply with a "court judgment or order." 50 U.S.C. § 3934(a). A "judgment" for purposes of § 3934 is defined as "any judgment, decree, order, or ruling, final or temporary." 50 U.S.C. § 3911(9). No outstanding "judgment, decree, order, or ruling" of any kind applies to Mr. Carrelo, so § 3934 does not properly govern his request.

Rather, Mr. Carrelo seeks a stay of "*all proceedings* in this case." (*See* ECF No. 22, at 1 (emphasis added).) Accordingly, the Court construes Mr. Carrelo's Motion to Stay as moving pursuant to 50 U.S.C. § 3932, which governs stays of the action as a whole. *See* 50 U.S.C. § 3932. The Court reviews Mr. Carrelo's request pursuant to 50 U.S.C. § 3932 below.

### 2.   The Motion to Stay Does Not Meet the Requirements of 50 U.S.C. § 3932

While 50 U.S.C. § 3932 properly governs the Motion to Stay because the Motion seeks to stay "all proceedings in this case," (ECF No. 22, at 1), Mr. Carrelo's Motion to Stay does not

fulfill the requirements of § 3932 for two reasons.  First, the Motion to Stay does not indicate when Mr. Carrelo will be available to resume his case, as required by § 3932(b)(2)(A).  Second, the Motion to Stay does not include a communication or letter from Mr. Carrelo's commanding officer concerning the extent of Mr. Carrelo's unavailability, as required by § 3932(b)(2)(B).  *See* 50 U.S.C. § 3932(b)(2).

First, although Mr. Carrelo submitted with his Motion a Declaration from his counsel James B. Feinman (the "Feinman Declaration"), the Feinman Declaration fails to satisfy all of the requirements of § 3932(b)(2)(A).  (ECF No. 23, at 2; ECF No. 23-1.)  The Feinman Declaration constitutes a "communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear[.]"  *See* 50 U.S.C. 3932(b)(2)(A).  Mr. Feinman declares that Mr. Carrelo informed him of a deployment with the United States Coast Guard.  (ECF No. 23-1 ¶ 2.)  Mr. Feinman submits that Mr. Carrelo "is not available to discuss his case . . . by reason of his military service, and cannot assist . . . in preparing the prosecution for his case in Indiana or in the Eastern District of Virginia."  (ECF No. 23-1 ¶ 5.)

However, the Feinman Declaration does not identify when Mr. Carrelo will be available to resume his case.  *See* 50 U.S.C. § 3932(b)(2)(A) (providing that the letter or other communication shall "stat[e] a date when the servicemember will be available to appear").  Indeed, he says that he cannot.  In the Feinman Declaration, Mr. Feinman avers that "Mr. Carrelo . . . could not tell [Mr. Feinman] where he is going, *nor how long he will be gone.*"  (ECF No. 23-1 ¶ 2 (emphasis added)); *compare Rose v. W. Va. Div. of Corr.*, No. 2:23-cv-00320, 2023 U.S. Dist. LEXIS 108088, at *2–3 (S.D. W. Va. June 22, 2023) (granting motion to stay where motion listed servicemember's current military orders, location outside the United States,

13

documentation from servicemember's commanding officer, date of return to the United States, and date when case could resume).

Second, Mr. Carrelo's Motion to Stay fails to include any documentation from Mr. Carrelo's commanding officer "stating that the servicemember's current military duty prevents appearance and that military leave is not authorized[.]" 50 U.S.C. § 3932(b)(2)(B). The Feinman Declaration is the only document that accompanies the Motion to Stay, and its author is Mr. Carrelo's counsel, not his commanding officer. The Feinman Declaration does not purport to represent any communication with or from Mr. Carrelo's commanding officer.

Mr. Carrelo's Motion to Stay fails to meet the requirements of § 3932(b) both because it fails to identify when Mr. Carrelo will be available to appear in the action and because it fails to include a letter or other communication from Mr. Carrelo's commanding officer stating that Mr. Carrelo's military duty prevents his appearance and that leave is not authorized. *See* 50 U.S.C. § 3932(b)(2). Because Mr. Carrelo's Motion to Stay does not meet the requirements of § 3932(b)(2), the Court will deny the Motion to Stay without prejudice. (ECF No. 22.)

### B.    The Court Declines to Consider Personal Jurisdiction Because Transfer Is Proper Regardless of Whether this Court Has Personal Jurisdiction over Keystone Due to the Forum-Selection Clause

Because the mandatory forum-selection clause at bar here warrants transfer regardless of whether this Court has personal jurisdiction over Keystone, the Court will decline to consider personal jurisdiction here.[11] *See Leroy*, 443 U.S. at 180 ("[W]hen there is a sound prudential

---

[11] The parties dispute whether this Court has personal jurisdiction over Keystone. Keystone argues for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF No. 15, at 3–8.) Mr. Carrelo counters that the Court has personal jurisdiction and, in the alternative, he seeks discovery on the issue of personal jurisdiction. (ECF No. 18, at 1–5.)

justification for doing so . . . a court may reverse the normal order of considering personal jurisdiction and venue."); *see also Adhikari*, 2016 WL 4162012, at \*3–4 (refraining from deciding personal jurisdiction as to each party when venue was clearly improper) ("[A] court need not have personal jurisdiction over defendants before transferring a case."). Any decision on personal jurisdiction would amount to dicta. Allowing one party to seek jurisdictional discovery also would wholly waste litigation resources.

### C.   The Forum-Selection Clause Warrants Transfer

Having decided to resolve the issue of venue rather than personal jurisdiction, the Court next considers the parties' arguments regarding the forum-selection clause at issue in this case. The forum-selection warrants transfer for three reasons. First, the forum-selection clause is valid and enforceable, and Mr. Carrelo's arguments that he did not assent to the forum-selection clause and that the term "state of manufacture" is void for vagueness both fail. Second, the forum-selection clause is mandatory rather than permissive, because the phrase "exclusive jurisdiction" unambiguously indicates that the venue indicated represents the exclusive venue in which claims can be brought. Third, Mr. Carrelo has presented no evidence of any extraordinary circumstances unrelated to the convenience of the parties that militates against transfer. Accordingly, the valid, enforceable, and mandatory forum-selection clause mandates transfer to the Northern District of Indiana, because the state of manufacture was Indiana.

### 1.   The Forum-Selection Clause is Valid and Enforceable

First, Keystone argues that Indiana represents the exclusive jurisdiction with authority over this dispute due to the valid and enforceable forum-selection clause. (ECF No. 15, at 8–9;

---

Keystone also seeks dismissal of Counts II through V pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15, at 17.) The Court declines to consider these arguments because it finds that transfer is warranted for the reasons discussed *infra*.

ECF No. 19, at 4–5.) Mr. Carrelo argues (i) that he did not assent to the forum-selection clause because no one ever showed it to him and because no mutual understanding existed as to the "state of manufacture" provision; and, (ii) that the "state of manufacture" term is void for vagueness. (ECF No. 18, at 5–8.)

Mr. Carrelo's assent and vagueness arguments fail to show that the forum-selection clause is invalid under federal common law. *See Albemarle Corp.*, 628 F.3d at 649–50. Further, Mr. Carrelo does not present exceptional circumstances or persuasive public interest factors which preclude enforcement of a valid forum-selection clause. *See Atl. Marine*, 571 U.S. at 62. The Court will transfer this case in its entirety because the Limited Warranties at bar contain a valid and enforceable forum-selection clause.

### a.    Mr. Carrelo Assented to the Limited Warranties

Mr. Carrelo argues that he could not have manifested and did not manifest assent to the Limited Warranties for two reasons. First, Mr. Carrelo avers that Keystone never informed him of the warranty provision at issue. (ECF No. 18, at 6–7.) Second, Mr. Carrelo states that he did not assent to the Limited Warranties because no mutual understanding existed between the parties as to terms of the Limited Warranties, specifically the meaning of the "state of manufacture" provision. (ECF No. 18, at 6–8.) Mr. Carrelo's arguments falter on both fronts.

First, Mr. Carrelo's own Complaint contradicts his argument that Keystone never showed him the warranty provisions it seeks to enforce. Mr. Carrelo avers in his Complaint that "on November 2, 2022 . . . Keystone . . . provided a written warranty to [Mr. Carrelo]." (ECF No. 1 ¶ 4.) Moreover, Mr. Carrelo pursues a breach of warranty claim under the Virginia Uniform Commercial Code, Va. Code § 8.2-714 (Count IV). (ECF No. 1 ¶¶ 21–27.) Mr. Carrelo cannot disclaim his assent to or knowledge of the Limited Warranties while basing a cause of action on

these same Limited Warranties. *See Beverley v. Jayco, Inc.*, No. 1:23-cv-00814 (PTG/JFA), 2024 WL 55478, at *3 (E.D. Va. Jan. 4, 2024) (rejecting similar claim where "the limited warranty [p]laintiffs challenge in an effort to defeat enforcement of the forum-selection clause [wa]s the very warranty they [sought] to enforce" and finding that plaintiffs were "estopped from seeking to enforce the [warranty] while at the same time asserting that is was procured by fraud" (citations and internal quotation marks omitted)).

Second, Mr. Carrelo argues that he did not manifest assent to the Limited Warranties because no mutual understanding existed between the parties as to the definition of the "state of manufacture." (ECF No. 18, at 6–8.) Federal common law defines assent as "whether there was an 'offer' and an 'acceptance,' i.e., a meeting of the minds *from an objective standpoint*[.]" *Piper v. Ford Motor Co.*, No. 1:23-cv-1088 (DJN), ECF No. 57, at *3–4 (E.D. Va. Jan. 29, 2024)[12] (emphasis added) (quoting *A-Transport Nw. Co., Inc. v. United States*, 36 F.3d 1576, 1581 (Fed. Cir. 1994)). Mr. Carrelo's subjective belief as to whether he assented is immaterial under federal common law. *See Piper*, No. 1:23-cv-1088 (DJN), ECF No. 57 at *3.[13] Here, Keystone "provided a written warranty[,]" (ECF No. 1 ¶ 4), which constitutes an offer. Mr.

---

[12] The Memorandum Opinion granting the Motion to Transfer is not published to Westlaw, therefore the Court cites the pagination provided by CM/ECF.

[13] Mr. Carrelo, for his part, cites Virginia Supreme Court cases, which this Court cannot consider in evaluating the Motion to Transfer based on a forum-selection clause. (ECF No. 18, at 6); *see Albemarle Corp.*, 628 F.3d at 650 (specifying that "when a court is analyzing a forum selection clause, which changes the default venue rules applicable to the agreement, that court will apply *federal law*" (emphasis added)). Although Mr. Carrelo identifies one federal case that cites a state court opinion Mr. Carrelo seeks to rely on, that court was sitting in diversity jurisdiction and therefore applied Virginia law rather than federal common law, as this Court must do here. *Cyberlock Consulting Inc. v. Info. Experts*, 939 F. Supp. 2d 572, 578 n.2 (E.D. Va. 2013); *see also Cyberlock Consulting Inc. v. Info. Experts*, 876 F. Supp. 2d 672, 677 n.3 (E.D. Va. 2012) ("As a federal court exercising diversity jurisdiction, the Court must apply the choice of law rules of the forum state, *i.e.*, Virginia." (citations omitted)).

Carrelo agreed to the written warranty by signing a "Retail Warranty Registration" at the time of sale, (ECF No. 19-1), which constitutes acceptance. The written warranty and Mr. Carrelo's signature thus signal a meeting of the minds "from an objective standpoint" sufficient to constitute assent under federal common law. *See id.* at *3–4 (citation and internal quotation marks omitted).

Because Mr. Carrelo's own Complaint concedes that he received a copy of the written warranty, objective manifestations of assent exist in the written warranty and signed retail warrant registration. Further, the "state of manufacture" is not too vague to enforce. In sum, the Court rejects Mr. Carrelo's assertion that he did not assent to the Limited Warranties.

      **b.**    <u>The Term "State of Manufacture" Is Definite and Enforceable</u>

Mr. Carrelo's contention that "state of manufacture" is too vague to enforce in a forum-selection clause also is flawed. Although Mr. Carrelo argues that he did not know that "state of manufacture" meant Indiana, (ECF No. 18, at 5–7), he does not suggest that the term confused or misled him in any way. As an initial matter, the term "state of manufacture," while indefinite in the sense that it does not specify *which* state, falls far short of being void for vagueness. Courts, including this court, have upheld the term in other forum-selection clauses. *See, e.g., Garrett v. Gulf Stream Coach, Inc.*, No. 3:08-cv-792 (MHL), 2009 WL 936297, at *1–3 (E.D. Va. Apr. 7, 2009) (upholding a forum-selection clause that provided for "exclusive jurisdiction . . . in the courts of the State of Manufacture"); *Wells v. Wheeler RV Las Vegas LLC*, 2008 WL 11506799, at *3 (D. Nev. Feb. 4, 2008) ("[T]he 'State of Manufacture' situs of the forum-selection clause 'has the salutary effect of dispelling any confusion about where suits arising from the [warranty] must be brought and defended[.]" (first alteration in original) (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991))).

Even assuming for the sake of argument that it were necessary to identify a particular state to enforce the provision, Keystone argues that Mr. Carrelo was on notice that the state of manufacture was Indiana because the Owner's Manual lists Keystone's address in Indiana, the forum-selection clause twice references Indiana law, and the Retail Warranty Registration lists Indiana as the origin of the RV.[14] (ECF No. 19, at 4.) Under federal common law, contract terms are vague or ambiguous only when they are "susceptible to two reasonable interpretations." *Blue Cross & Blue Shield United of Wisconsin & Subsidiaries v. United States*, 117 F. App'x 89, 93 (Fed. Cir. 2004) (quoting *A-Transport Northwest Co., Inc.*, 36 F.3d at 1584). One reasonable interpretation of the documents provided to and signed by Mr. Carrelo is that the "state of manufacture" is Indiana, given that Indiana law governs the agreement and the same Indiana address is provided throughout the Owner's Manual, Warranty Registration, and Warranty Guide. (ECF Nos. 15-3, 15-4, 15-5.) Mr. Carrelo does not proffer an alternative reading of the documents which could lead to a reasonable conclusion that the state of manufacture is anywhere but Indiana, nor can the Court see one.

The term "state of manufacture" is specific enough in and of itself to be enforced. Further, because the "state of manufacture" term in the context of the documents at issue has only one reasonable interpretation, the term unambiguously refers to Indiana.

In sum, the forum-selection clause is valid and enforceable because Mr. Carrelo assented to the forum-selection clause and the "state of manufacture" term is not too vague to enforce.

---

[14] Keystone maintains that Mr. Carrelo signed a Retail Warranty Registration listing Indiana as the state of manufacture. (ECF No. 19, at 4.) In fact, the "Origin" field of the Retail Warranty Registration that Mr. Carrelo signed, (ECF No. 19-1), is blank, with an Indiana P.O. Box address in the top left corner. Keystone attached to its Motion to Transfer a Retail Warranty Registration listing "Indiana" in the "Origin" field, but this version of the document is unsigned by either party. (ECF No. 15-3.) This discrepancy is of no moment because the Court need not rely on this document to reach its conclusion here.

### 2.    The Forum-Selection Clause Is Mandatory

The forum-selection clause at bar in this case is clearly mandatory rather than permissive, which weighs in favor of transfer. "A mandatory forum[-]selection clause contains language unambiguously indicating that the venue indicated is the exclusive venue in which claims can be brought." *Garrett*, 2009 WL 936297, at *1–3 (citations omitted). The forum-selection clause unambiguously states, "*Exclusive* jurisdiction for deciding legal disputes relating to alleged breach of warranty or representations of any nature must be filed in the courts within the State of Manufacture." (ECF No. 15-4, at 18 (emphasis added).) Mr. Carrelo signed a contract containing this mandatory language. The Court must enforce the forum-selection clause unless Mr. Carrelo can show extraordinary circumstances unrelated to the convenience of the parties that clearly disfavor transfer.

### 3.    No Extraordinary Circumstances Unrelated to the Convenience of Parties Clearly Disfavor Transfer

Where a valid and enforceable mandatory forum-selection clause exists, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52. Here, Mr. Carrelo alleges no extraordinary circumstances unrelated to the convenience of parties that would clearly disfavor transfer. Because the Court concludes that a valid and enforceable forum-selection clause exists and the parties identify no extraordinary circumstances that would disfavor transfer, transfer of the case is proper. *See id.*

### IV.  Admonishment

On May 2, 2024, the Court entered an Order to Show Cause directing counsel for Mr. Carrelo, Mr. James B. Feinman, to explain why the Motion to Transfer Venue, (ECF No. 14), should not be granted. (ECF No. 20, at 7.) In the Order to Show Cause, the Court explained in

detail the three adverse rulings Mr. Feinman had previously received in other cases filed in the Eastern District of Virginia "based on the same or similar choice of law provisions as the one at issue in this case." (ECF No. 20, at 1–3 (citing *Beverley v. Jayco, Inc.*, No. 1:23-cv-00814 (PTG, JFA), 2024 WL 55478 (E.D. Va. Jan. 4, 2024); *Sands v. Forest River, Inc.*, No. 2:23-cv-00379 (JKW), 2024 WL 150230, at *1 (E.D. Va. Jan. 12, 2024); *Piper v. Ford Motor Co.*, No. 1:23-cv-1088 (DJN), ECF No. 57, at *1 (E.D. Va. Jan. 29, 2024)).) The Court also identified and discussed in detail two other cases that, while not brought by Mr. Feinman, contain rulings adverse to his position in the case at bar. (ECF No. 20, at 3–5 (citing *Bracken v. Forest River, Inc.*, 3:23-cv-566 (DJN), 2024 WL 448789, at *1–2 (E.D. Va. Jan. 9, 2024); *McAuley v. FCA US LLC*, No. 3:23-cv-233 (HEH), 2023 WL8881472, at *1 (E.D. Va. Dec. 22, 2023)).) The Court identified "disquieting similarities" between this case and these five cases, which "unanimously" resulted in transfer, and asked Mr. Feinman to explain why he "advances virtually identical arguments" in the case at bar. (ECF No. 20, at 5–7.)

On May 16, 2024, Mr. Carrelo filed a Response to Order to Show Cause. (ECF No. 21.) In his response, Mr. Feinman agrees with the Court that its "review of prior litigation in the Eastern District [of Virginia] appears correct in all material aspects." (ECF No. 21, at 1.) He asserts that venue provisions are "waivable" and that he "never knows whether a camper manufacturer is going to waive contractual forum[-]selection clauses." (ECF No. 21, at 2.) He avers that another Judge in this Division rejected his proposal that he continue to file claims in the Eastern District of Virginia that he knows are subject to a forum-selection clause, on the off chance that the defendant will waive personal jurisdiction objections. (ECF No. 21, at 2–3.) This proposal would have involved Mr. Feinman advising his clients not to oppose a motion to transfer if a defendant chose to invoke the forum-selection clause. (ECF No. 21, at 2–3.)

21

Mr. Feinman concludes this Response to Order to Show Cause by informing the Court that settlement negotiations are underway and that Mr. Carrelo has moved for a stay of the case pursuant to the Servicemembers Civil Relief Act. (ECF No. 21, at 3–4.)  No settlement has been presented to the Court.  He offers nothing in the way of a substantive legal response to the Order to Show Cause.

The Court deems Mr. Carrelo's Response to Order to Show Cause wholly inadequate.  As an initial matter, it is an unfortunate coincidence that only on May 16, 2024—two weeks after receiving notice of this Court's intent to transfer the case, and on the very day that his response to the Order to Show Cause was due—did Mr. Feinman first seek to stay the proceedings on the basis of his client's military service.  Mr. Feinman himself avers that Mr. Carrelo informed Mr. Feinman of his military duty over two months earlier, on March 4, 2024.  (ECF No. 23-1, at 1.)  Based on this timing, the Court must remind Mr. Feinman of the strictures of Federal Rule of Civil Procedure 11(b).[15]

---

[15] Rule 11 states, in pertinent part:

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, *cause unnecessary delay*, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are *warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law*; [and]

(3) the *factual contentions have evidentiary support* or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Separately from the disquieting timing of the Motion to Stay, Mr. Carrelo's Response contradicts the aforementioned position he proposed of advising his clients not to oppose a motion to transfer if a defendant invoked a forum-selection clause. In this case, Keystone did just that. Not only did Mr. Carrelo file an initial response in opposition, he then elected not to withdraw his objection even *after* the Court indicated that his objection lacked any basis in law. The Order to Show Cause outlined in explicit detail the numerous adverse rulings, most *against Mr. Feinman himself*, that controverted the positions he advances in the case at bar.

This litigation conduct borders on the frivolous and certainly evinces a disrespect for the Court, which had endeavored to give Mr. Carrelo's counsel every opportunity to explain any circumstances that might counsel a different result. Instead, Mr. Feinman skirted the Court's directives, declined to concede that transfer was patently appropriate, and lobbed an unavailing and legally inaccurate procedural "Hail Mary" by filing a Motion to Stay at the eleventh hour and only when he realized he was sure to lose. In so doing, Mr. Feinman has needlessly squandered litigative and judicial resources.

Given this determination, the parties shall file, within seven (7) days of the date of this Memorandum Opinion, a motion or position as to whether sanctions against Mr. Carrelo or his counsel should issue pursuant to Fed. R. Civ. P. 11(b) and (c).[16]

---

Fed. R. Civ. P. 11(b) (emphases added).

[16] Rule 11 states, in pertinent part:

(c) SANCTIONS.

> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. . . .

## V.  Conclusion

Mr. Carrelo has not established the propriety of a stay pursuant to the Servicemembers'
Civil Relief Act under either § 3932 or § 3934. The Court will enforce the valid forum-selection
clause between Mr. Carrelo and Keystone and will transfer the case in its entirety to the Northern
District of Indiana.

For the reasons articulated above, the Court will deny without prejudice the Motion to
Stay, (ECF No. 22), and grant the Motion to Dismiss to the extent it seeks transfer, (ECF
No. 14). The Court declines to consider Keystone's arguments for dismissal pursuant to Federal
Rule of Civil Procedure 12(b)(2) and 12(b)(6).

An appropriate Order shall issue.

Date: **8 | 6 | 2024**
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

(2) *Motion for Sanctions*. A motion for sanctions must be made separately
from any other motion and must describe the specific conduct that
allegedly violates Rule 11(b). . . . If warranted, the court may award to
the prevailing party the reasonable expenses, including attorney's fees,
incurred for the motion.

(3) *On the Court's Initiative*. On its own, the court may order an attorney,
law firm, or party to show cause why conduct specifically described in the
order has not violated Rule 11(b).

(4) *Nature of a Sanction*. A sanction imposed under this rule must be
limited to what suffices to deter repetition of the conduct or comparable
conduct by others similarly situated. The sanction may include
nonmonetary directives; an order to pay a penalty into court; or, if
imposed on motion and warranted for effective deterrence, an order
directing payment to the movant of part or all of the reasonable attorney's
fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c).